Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>Peticionario<br><br>V.<br><br>JUAN MELÉNDEZ SUÁREZ<br><br>Recurrido | KLCE202400284 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso núm.: F VI2023G0008<br><br>Sobre: A95/Asesinato Atenuado |

Panel integrado por su presidente, el juez Figueroa Cabán, la jueza Grana Martínez y el juez Rodríguez Flores

**Figueroa Cabán, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de abril de 2024.

Comparece el Pueblo de Puerto Rico, en adelante el Ministerio Público o el peticionario, quien solicita que revoquemos la *Resolución* emitida el 5 de febrero de 2024 por el Tribunal de Primera Instancia, Sala de Carolina, en adelante TPI. Mediante la misma se declaró no ha lugar la solicitud del Ministerio Público de eliminar a la doctora Lorraine López Morell, en adelante la Dra. López, como testigo de cargo; incluir como testigo de cargo al doctor Carlos F. Chávez Arias, en adelante Dr. Chávez; y permitir el descubrimiento de prueba de la opinión pericial a la defensa.

Por los fundamentos que expondremos a continuación, se expide el auto de *certiorari* y se revoca la *Resolución* recurrida.

Número Identificador
SEN2024_____

**-I-**

Por hechos ocurridos el 6 de abril de 2022, contra el señor Juan Meléndez Suárez, en adelante el señor Meléndez o el recurrido, se formularon acusaciones al amparo del Art. 95 (Asesinato Atenuado) del Código Penal de Puerto Rico de 2012 y de los Art. 6.05 (Portación de Armas, Transportación o Uso de Armas sin Licencia) y 6.14 (A) (Disparar o Apuntar Armas de Fuego) de la Ley Núm. 168-2019.[1]

Ahora bien, en el contexto de la vista con antelación a juicio, el Ministerio Público presentó una *Moción Urgente en Solicitud de Remedio y Solicitud de Inclusión de Testigo*. Arguyó que la Dra. López, quien realizó la autopsia del occiso en el presente caso y que originalmente fue anunciada como testigo de cargo, renunció a su puesto en el Instituto de Ciencias Forenses. Sostuvo, además, que "[a] pesar de los esfuerzos extraordinarios realizados por el Gobierno de Puerto Rico para lograr la comparecencia de la testigo", "no es legalmente viable perfeccionar un contrato" con el patrono actual de la Dra. López. En consecuencia, esta no estará disponible para testificar presencialmente o mediante el sistema de vídeo conferencia de dos vías.[2]

Ante ese escenario, el peticionario solicitó al TPI que se elimine a la Dra. López como testigo de cargo del pliego acusatorio; que en su lugar se incluya al Dr. Chávez como testigo de cargo y; finalmente, que se permita el descubrimiento de la Opinión Pericial a la Defensa. De entenderlo necesario, solicita, además,

---

[1] Apéndice del peticionario, págs. 9-14.
[2] *Id.*, págs. 15-21.

celebrar una vista al amparo de la Regla 109 de Evidencia.[3]

En cumplimiento de una *Orden* previa del TPI, el recurrido presentó una *Moción Oposición a Sustitución sobre Declaración del Patólogo*. A su entender, la incomparecencia de la Dra. López no obedece a que no está disponible o falleció. Por el contrario, su indisponibilidad responde a razones económicas. Además, el perito alternativo emitiría su opinión a base de fotos de la autopsia sin conocimiento personal sobre la materia a declarar. Sin embargo, este método no es confiable, ni es aceptado por la comunidad científica. En su opinión, el mecanismo de vista bajo la Regla 109 de evidencia es improcedente y perjudicial para el señor Meléndez porque dilataría los procedimientos en menoscabo a su derecho a juicio rápido.[4]

Con el beneficio de la comparecencia de ambas partes, el TPI determinó que el Ministerio Público no puede presentar un perito forense distinto al que realizó la autopsia, "bajo el único fundamento de que la testigo no se encuentra disponible por no haberse logrado un acuerdo contractual con su actual patrono".[5] Razonó:

> Nuestro ordenamiento penal no le permite al Ministerio Público -mediante las referidas reglas- presentar a un perito forense distinto al que realizó el informe de autopsia y en el que previamente no se tuvo oportunidad de contrainterrogar con relación a las declaraciones que se presentan como prueba. A ello, debemos sumarle, que la no disponibilidad de la patóloga forense para declarar presencialmente en el juicio descansa únicamente en razones de índole contractual o económico, sin que el ministerio público haya tan siquiera identificado que su solicitud adelanta una política pública importante y en qué forma la circunstancia excepcional de presentar un perito distinto al que realizó la

---

[3] *Id.*
[4] *Id.*, págs. 22-36.
[5] *Id.*, pág. 54.

autopsia asegura la confiabilidad del testimonio. Resulta patente que el Ministerio Público tampoco haya auscultado las razones por las cuales la patóloga forense en cuestión no estaría disponible para prestar testimonio mediante el sistema de video bidireccional ("two-way video transmission o remote witness testimony")…[6]

En desacuerdo, el peticionario solicitó reconsideración. Coincidió, en esencia, con los fundamentos jurídicos de la *Resolución* recurrida. Sin embargo, arguyó que aquellos no aplican a la controversia ante nuestra consideración. A su entender, la pregunta a contestar por el foro recurrido es "si se debe o no permitir la inclusión del nuevo testigo, Dr. Carlos F. Chávez Díaz, MD, Perito Forense del Instituto de Ciencias Forenses…" y ello "debe evaluarse a la luz de lo resuelto en *Pueblo vs. Ramos Álvarez*, 118 DPR 78 (1977)".[7] Añadió, que para la cabal consideración de la controversia es necesario celebrar una vista evidenciaria bajo la Regla 109 de Evidencia, "para establecer a base de los incisos A y B de la Regla, la capacidad del testigo, confiabilidad de su testimonio y la admisibilidad del Informe ICF-2022-002943/PAT-1486-22".[8] Para ello, recomendó examinar las Reglas 702 a 707 de Evidencia.[9]

Luego de examinar los argumentos de las partes en una vista en la que se discutió la moción de reconsideración, el TPI reiteró su determinación previa a los efectos de no autorizar al testigo pericial propuesto por el peticionario, quien testificaría en sustitución de la patóloga forense que realizó la autopsia. Cónsono con lo anterior, ordenó "a la Dra.

---

[6] *Id.*, pág. 53.
[7] *Id.*, pág. 58.
[8] *Id.*
[9] *Id.*

López Morell testificar en este caso, so pena de desacato…".[10]

Nuevamente inconforme, el Ministerio Público presentó una *Petición de Certiorari* en la que alegó que el TPI cometió los siguientes errores:

> EL TRIBUNAL DE PRIMERA INSTANCIA ABUSÓ DE SU DISCRECIÓN E INCURRIÓ [*SIC*.] CRASO Y MANIFIESTO ERROR DE DERECHO AL DETERMINAR QUE EL TESTIMONIO DEL DOCTOR CHÁVEZ ARIAS VIOLENTA LA CLÁUSULA DE CONFRONTACIÓN, A PESAR DE QUE ESTE SOLO TESTIFICARÁ, SUJETO A CONTRAINTERROGATORIO, SOBRE SU OPINIÓN PERICIAL ICF-2022-002943 DEL CUAL ÉL ES AUTOR, Y LA CUAL NO ESTÁ BASADA NI HACE NINGUNA REFERENCIA AL INFORME MÉDICO FORENSE PAT-1486-22 QUE LA DOCTORA LÓPEZ MORELL PREPARÓ.
>
> EL TRIBUNAL DE PRIMERA INSTANCIA ABUSÓ DE DISCRECIÓN E INCURRIÓ EN UN CRASO Y MANIFIESTO ERROR DE DERECHO AL NO PERMITIR LA ELIMINACIÓN DE LA DOCTORA LÓPEZ MORELL, Y LA INCLUSIÓN DEL DOCTOR CHÁVEZ ARIAS.

Luego de revisar los escritos de las partes y los documentos que obran en autos, estamos en posición de resolver.

**-II-**

**A.**

El auto de *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior.[11] Distinto al recurso de apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de manera discrecional, por tratarse de ordinario de asuntos interlocutorios.[12] Sin embargo, nuestra discreción debe

---

[10] *Id*. págs. 61-72.
[11] *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *García v. Padró*, 165 DPR 324, 334 (2005).
[12] *Torres González v. Zaragoza Meléndez*, *supra*, pág. 847; *Medina Nazario v. McNeil Healthcare LLC*, *supra*, pág. 729; *García v. Padró*, *supra*, pág. 334.

ejercerse de manera razonable, procurando siempre lograr una solución justiciera.[13]

Por su parte, la Regla 40 del Reglamento de este Tribunal establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*. Sobre el particular dispone:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[14]

Ahora bien, una vez este Foro decide expedir el auto de *certiorari*, asume jurisdicción sobre el asunto en controversia y se coloca en posición de revisar los planteamientos en sus méritos.[15] Sobre el particular, el Tribunal Supremo de Puerto Rico, en adelante el TSPR, afirmó:

---

[13] *Torres González v. Zaragoza Meléndez, supra*, pág. 847; *Municipio v. JRO Construction*, 201 DPR 703, 711-712 (2019); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012); *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008).

[14] *Torres González v. Zaragoza Meléndez*, *supra*, pág. 848; *Municipio v. JRO Construction*, *supra*; 4 LPRA Ap. XXII-B, R. 40.

[15] H. A. Sánchez Martínez, *Práctica Jurídica de Puerto Rico, Derecho Procesal Apelativo*, San Juan, Lexis-Nexis de Puerto Rico, Inc., 2001, pág. 547.

> Asumir jurisdicción sobre un asunto, expidiendo el auto de *certiorari*, ha sido definido como la autoridad en virtud de la cual los funcionarios judiciales conocen de las causas y las deciden. Constituye la facultad de oír y resolver una causa y de un tribunal a pronunciar sentencia o resolución conforme a la ley. Dicha jurisdicción incluye la facultad de compeler a la ejecución de lo decretado y puede decirse que es el derecho de adjudicar con respecto al asunto de que se trata en un caso dado.[16]

En fin, al asumir jurisdicción sobre el asunto que tiene ante su consideración mediante la expedición de un auto de *certiorari*, este Tribunal cumple su función principal de revisar las decisiones del foro de instancia para asegurarse que las mismas son justas y que encuentran apoyo en la normativa establecida.[17]

**B.**

Tanto la Constitución de Puerto Rico como la Constitución federal, "reconocen el derecho de toda persona acusada de delito a confrontarse con las personas testigos que declaren en su contra. *No obstante, este derecho opera en la etapa del juicio*".[18]

Específicamente, la Enmienda Sexta de la Constitución de los Estados Unidos, al igual que el artículo II, sección 11 de la Constitución de Puerto Rico, garantizan que el acusado disfrute el derecho a carearse y a confrontarse con los testigos de cargo.[19] Sobre el particular, la cláusula de confrontación ofrece al imputado tres garantías constitucionales en la etapa del juicio, a saber: (1) carearse con los testigos en su contra; (2) contrainterrogar a los testigos de cargo; y (3) limitar la admisión de la prueba de referencia.[20]

---

[16] *Negrón v. Srio. de Justicia*, 154 DPR 79, 92-93 (2001).
[17] *Id.*, pág. 93.
[18] *Pueblo v. Cruz Rosario*, 205 DPR 7, 22 (2020). (Énfasis en el original).
[19] Emda. VI., Const. EE. UU., LPRA, Tomo I; Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1.
[20] *Pueblo v. Cruz Rosario,* 204 DPR 1040, 1049 (2020); *Pueblo v. Santos Santos*, 185 DPR 709, 720 (2012); *Crawford v. Washington*, 541

Cónsono con lo anterior, el TSPR ha expresado que, ante la garantía constitucional a la confrontación:

> [E]l debido proceso de ley exige que se pongan al alcance del acusado los medios de prueba para impugnar los testigos, atacar su credibilidad y todo recurso análogo encaminado a erradicar la falsedad del juicio y evitar el desvío de la justicia. Un careo sin estos instrumentos, cuando sean legítimamente asequibles, frustra el propósito del precepto constitucional.[21]

Por otro lado, la Corte Suprema de Estados Unidos concluyó que solo se admite en evidencia una declaración testimonial hecha contra un acusado fuera de corte si el declarante no está disponible para comparecer al juicio y el acusado tuvo la oportunidad de contrainterrogarlo en el momento en que declaró. Si no se satisfacen estos requisitos, la declaración sería prueba de referencia inadmisible contra el acusado, independientemente de que satisfaga alguna excepción de las dispuestas en las Reglas de Evidencia.[22] En esencia, al resolver *Crawford v. Washington*, 541 US 36 (2004), la Corte Suprema federal determinó que la cláusula de confrontación sólo se activa en relación con declaraciones testimoniales, tanto para testimonios hechos en corte, como para declaraciones realizadas fuera del tribunal si (1) el declarante no está disponible para comparecer al juicio y (2) el acusado tuvo la oportunidad de contrainterrogar al declarante en el momento en que se hizo la declaración.[23]

## c.

La Regla 52 de Procedimiento Criminal dispone que, antes del juicio, el Ministerio Público le entregará al

---

US 36, 42-47 (2004); E. Chiesa Aponte, *Procedimiento Criminal y la Constitución: Etapa adjudicativa*, Ediciones SITUM, 2018, pág. 87.

[21] *Pueblo v. Guerrido López*, 179 DPR 950, 958 (2010).

[22] *Crawford v. Washington*, *supra*. Véase, además *Pueblo v. Santos Santos*, *supra*, pág. 721.

[23] *Pueblo v. Santos Santos*, *supra*, págs. 720-722.

acusado "una copia de la acusación con una lista de los testigos, antes de que se le requiera que formule alegación alguna".[24] Resulta imperativo suministrar la lista de testigos de cargo a los fines de que la persona acusada tenga la oportunidad de prepararse adecuadamente para su defensa.[25] Sin embargo, el Tribunal tiene discreción para permitir la inclusión de testigos no anunciados en el juicio.[26] De modo, que para oponerse eficazmente a dicha inclusión, la defensa deberá alegar sorpresa, perjuicio o que necesita tiempo para refutar sus declaraciones.[27] Al respecto, el TSPR expresó lo siguiente:

> [E]l Tribunal de Primera Instancia tenía discreción para permitir la inclusión en el juicio de testigos que el Ministerio Público no anunció previamente a la defensa. En esos casos, el remedio es darle a la defensa un tiempo para prepararse. Pero si la defensa no alega sorpresa, perjuicio o necesidad de tiempo adicional para refutar las declaraciones del nuevo testigo de cargo, entonces no es necesario que se le conceda un tiempo adicional para prepararse. Por eso, en dicho caso, este Tribunal concluyó que el error aducido se había cometido, porque no procedía la suspensión del juicio. Determinó que el caso debió haber seguido su curso normal ya que la defensa no adujo sorpresa, perjuicio o necesidad de tiempo adicional. Véase, *Pueblo v. Santiago*, 56 DPR 109 (1940), donde este Tribunal llegó a la misma conclusión que en el caso recién discutido de *Pueblo v. Ramos Álvarez*, supra, ante unos hechos y controversia similar.[28]

**D.**

Nuestra Constitución garantiza a todo acusado el derecho a preparar una defensa adecuada y a obtener prueba a su favor.[29] Dicha norma incorpora la exigencia del debido proceso de ley de poner al alcance del acusado los medios de prueba necesarios para impugnar los

---

[24] 34 LPRA Ap. II R. 52.
[25] *Hoyos Gómez v. Tribunal Superior*, 90 DPR 201, 203 (1964).
[26] *Pueblo v. Ramos Álvarez*, 118 DPR 782, 789 (1987). Véase, además, *Pueblo v. Morales Rivera*, 112 DPR 463, 467-468 (1982).
[27] *Pueblo v. Santiago*, 56 DPR 109, 114 (1940).
[28] *Pueblo v. Rivera Santiago*, 176 DPR 559, 588-589 (2009).
[29] Art II, sec. 11, Const. ELA, LPRA, Tomo 1; *Pueblo v. Arocho Soto*, 137 DPR 762, 766 (1994).

testigos, atacar su credibilidad, erradicar la falsedad del juicio y evitar el desvío de la justicia.[30] Este principio se objetiva en la Regla 95 de Procedimiento Criminal.

En lo aquí pertinente, la Regla 95B establece que el Ministerio Público tiene la obligación recíproca de informar al acusado sobre cualquier prueba o material adicional que fue previamente requerido y que está sujeto al descubrimiento de prueba.[31] Dispone, además, que el descubrimiento de prueba en el procedimiento criminal se debe completar "en un plazo no mayor de diez (10) días antes del juicio". Es decir, de haber necesidad de informar un testigo nuevo, ello debe realizarse en un término no menor de 10 días previo al comienzo del juicio.

Del mismo modo, faculta al foro sentenciador a ordenar a las partes que permitan el descubrimiento o inspección del material o de la información, a prohibirles presentar la prueba no descubierta en el juicio y a emitir aquellas órdenes o remedios que estime necesarios de acuerdo con las circunstancias.[32]

-III-

Para el peticionario, el Dr. Chávez emitió una opinión pericial independiente sobre la muerte del occiso, basada en fotografías de su cadáver, fotografías de la escena del crimen y en la Boleta del Levantamiento del Cadáver. Ninguno de estos elementos fue considerado por la Dra. López al emitir su informe pericial. Además, en ningún momento, el peticionario pretende introducir prueba pericial preparada por aquella.

---

[30] *Pueblo v. Rodríguez Sánchez*, 109 DPR 243, 249 (1979).
[31] 34 LPRA Ap. II, R. 95B.
[32] *Id.*

Por el contrario, arguye que la solicitud del Ministerio Público, en todo momento, ha sido que se elimine a la Dra. López como testigo de cargo y que se le sustituya por el Dr. Chávez. Además, adujo el peticionario que esta solicitud es consistente con nuestro ordenamiento procesal penal. Más aún, cuando el recurrido no ha podido establecer que la petición sea sorpresiva o perjudicial. En su opinión, la insistencia del foro recurrido en que la Dra. López declare en el juicio equivale a intervenir con la discreción del peticionario de acusar y procesar al acusado.

En cambio, el señor Meléndez argumenta que no procede expedir el auto solicitado. Ello responde a que una opinión como la del Dr. Chávez, "basada en unas fotografías que ni siquiera fueron tomadas en presencia del perito sustituto", no satisfacen los criterios de la Regla 702 de Evidencia. Sostiene, además, que la jurisprudencia invocada por el peticionario no es vinculante en nuestro ordenamiento y es completamente distinguible a la controversia del presente caso.

Tiene razón el peticionario. Veamos.

A nuestro entender, la controversia no versa sobre el derecho del acusado a la confrontación con la prueba de cargo, sino es una en torno al manejo del caso. Específicamente, se circunscribe a resolver cómo atender una solicitud de inclusión de testigos en el procedimiento criminal. Sobre el particular, coincidimos con el Ministerio Público a los efectos de que procede la inclusión del Dr. Chávez como testigo de cargo porque el recurrido no alegó, ni menos probó, la existencia de sorpresa, perjuicio o necesidad de tiempo adicional para refutar las alegaciones del testigo en cuestión, *supra*.

Sin embargo, aun si asumiéramos, *in arguendo*, que se configuró alguno de esos factores, el TPI tenía remedios "menos drásticos" que impedir la inclusión del nuevo testigo pericial y ordenar, bajo apercibimiento de desacato, la comparecencia de la perito forense que practicó la autopsia del occiso. Por ejemplo, podía, *motu proprio*, conceder tiempo adicional a la defensa para prepararse.

El mismo resultado se alcanza si se examina la presente controversia bajo el prisma de las normas de descubrimiento de prueba que regulan los procedimientos de naturaleza penal en nuestro ordenamiento jurídico. Si se determina que la solicitud de inclusión del Dr. Chávez en esta etapa del procedimiento constituyó una violación de la obligación continua de informar del peticionario, el foro recurrido tiene amplia facultad para diseñar remedios para corregir la situación sin recurrir a la medida extrema de excluir del juicio al testigo perito del Ministerio Público. Conviene destacar que la Regla 95B de Procedimiento Criminal concede al foro sentenciador la potestad de "emitir aquellas ordenes o remedios que estime necesarios de acuerdo con las circunstancias", *supra*.

A lo anterior debemos añadir, que ni el TPI, ni menos aun el recurrido, han citado autoridades que establezcan, *a priori*, que las fotografías de una autopsia, "por su naturaleza", son declaraciones testimoniales que no se pueden presentar en el juicio a menos que el declarante no esté disponible como testigo o que el acusado haya podido contrainterrogarlo al momento de emitir las declaraciones.

Finalmente, como en este proceso el nuevo perito podrá ser contrainterrogado, la defensa tendrá la facultad de auscultar cuán independiente es la opinión pericial del Dr. Chávez respecto a la de la Dra. López. Así pues, el TPI estará en mejor posición para calibrar el valor probatorio del testimonio del nuevo perito.

### -IV-

Por los fundamentos antes expuestos, se expide el auto de *certiorari* y se revoca la *Resolución* recurrida. En consecuencia, se ordena eliminar a la doctora Lorraine López Morell como testigo de cargo y, en su lugar, incluir al doctor Carlos F. Chávez Arias como perito de cargo. El Tribunal de Primera Instancia, en el ejercicio de su discreción, podrá tomar aquellas medidas interlocutorias que entienda pertinentes para proteger el derecho del señor Juan Meléndez Suárez a preparar adecuadamente su defensa.

Finalmente, el Tribunal de Primera Instancia procederá de conformidad a lo aquí resuelto sin tener que esperar por nuestro mandato.

**Notifíquese inmediatamente a todas las partes y a la Hon. Gema González Rodríguez.**

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La jueza Grana Martínez concurre sin voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones